**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1999
_____

UNITED STATES OF AMERICA

v.

MARCELINO GARCIA,
                              Appellant


_____


On Appeal from the District Court
of the Virgin Islands
(D.C. No. 1-07-cr-00042-002)
District Judge: Honorable Anne E. Thompson
_____


Submitted Under Third Circuit L.A.R. 34.1(a)
April 24, 2013

Before:   McKEE, *Chief Judge*, SCIRICA, and VANASKIE, *Circuit Judges.*

(Filed: July 30, 2013)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Marcelino Garcia appeals his conviction of one count of money laundering, in

violation of 18 U.S.C. § 1956(a)(1), and one count of conspiracy to commit money

laundering, in violation of 18 U.S.C. § 1956(h).  Specifically, he challenges the

sufficiency of the evidence presented to the jury. Concluding that a jury rationally could have found Garcia guilty beyond a reasonable doubt on both counts, we will affirm the judgment of conviction.

I.

Since we write principally for the parties, we set forth only the facts essential to our analysis. Around 2001, Myron Punter began selling cocaine and crack cocaine in Alaska. He received the drugs via mail from the Virgin Islands, sent by one of Garcia's codefendants, Isaiah Fawkes, who grew up with Punter and Garcia in the Virgin Islands. Initially, Punter would wire money or send money orders directly to Fawkes, but later, in an attempt to avoid suspicion, Punter employed others to wire the money to other individuals in the Virgin Islands identified by Fawkes. One such person employed by Punter was Tanisha Wade. In December of 2002, Wade sent Garcia $10,000. At trial, an IRS special agent testified that when Garcia was arrested, he told the authorities that the $10,000 he received from Wade was intended for him to start a hair and nail salon in the Virgin Islands for her, but he never opened a salon and later spent the money personally. Wade testified that she never intended to move to the Virgin Islands.

In early 2003, about two months after the $10,000 transaction involving Garcia and Wade, Garcia, along with Fawkes and another codefendant, Shango Allick, visited Punter in Alaska for about week and stayed in his apartment. Punter testified at trial that, while Garcia was visiting, he gave Garcia about cocaine on one or two occasions so he could give it to women with whom he was socializing. Garcia was also with Punter in Alaska in June of 2003, and although Punter soon left the state, Garcia remained. When

2

Punter left, one of his buyers still owed him money for drugs, and Punter testified that he made arrangements for the buyer to give the money to Garcia.

In June of 2007, a grand jury indicted Garcia and seven other defendants on a number of counts, which included conspiracy to distribute cocaine, conspiracy to commit money laundering, and money laundering. After their indictment, Garcia and six other defendants proceeded to trial.[1] At the close of trial, Garcia moved for a judgment of acquittal, which the District Court denied. The jury returned a guilty verdict on one count each of conspiracy to commit money laundering (Count 2) and money laundering (Count 13). The District Court sentenced Garcia to twenty-four months' imprisonment, three years of supervised release, and a special assessment.

## II.

The District Court had jurisdiction under 48 U.S.C. § 1612(a) and 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

Defendants challenging the sufficiency of the evidence must meet an "extremely high" burden. *United States v. Iglesias*, 535 F.3d 150, 155 (3d Cir. 2008). We will uphold Garcia's conviction "if the government's evidence would permit a reasonable jury to 'find the essential elements of the crime[s] beyond a reasonable doubt.'" *United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011) (quoting *United States v. Starnes*, 583

---

[1] Five of the other codefendants' appeals were joined with this case: *United States v. Maragh*, No. 11-2036; *United States v. Allick*, No. 11-4305; *United States v. Alfred*, No. 11-4343; *United States v. Young*, No. 11-4344; and *United States v. Clouden*, No. 11-4522. A panel of this Court has already affirmed the judgment of conviction and sentence of Fawkes. *See United States v. Fawkes*, No. 11-4580, 2013 WL 150216 (Jan. 15, 2013).

F.3d 196, 206 (3d Cir. 2009)).  On such appeals, "we view evidence in the light most favorable to the government, mindful that it is the jury's province (and not ours) to make credibility determinations and to assign weight to the evidence." *Id.*

A.

Garcia first challenges the sufficiency of the evidence for his conviction of money laundering under 18 U.S.C. § 1956(a)(1)(B)(i).  To prove a defendant engaged in money laundering under that subsection, the government must establish:

> (1) an actual or attempted financial transaction; (2) involving the proceeds of [a] specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) . . . knowledge that the transaction[was] designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of [a] specified unlawful activity.

*Richardson*, 658 F.3d at 337-38.[2]

Garcia argues that the Government did not provide sufficient evidence to prove that he knew that the money he received was proceeds from unlawful drug trafficking and that he concealed the nature or source of the proceeds.  He asserts that Punter testified

---

[2] The original 2007 indictment charged Garcia with money laundering under both 18 U.S.C. § 1956(a)(1)(A)(i), which includes as an element the conducting of a financial transaction with the intent to promote the unlawful act, as well as § 1956(a)(1)(B)(i), which includes as an element the conducting of a financial transaction designed to conceal or disguise the nature or source of the unlawful activity.  Subsequently, the District Court granted the Government's motion to, among other things, strike the "'promotion' language from the indictment."  (*See* District Ct. Doc. # 387.)  The motion indicated that the Government intended to rely solely on the conceal/disguise theory of § 1956(a)(1)(B)(i).  Nevertheless, Garcia's judgment specifies the basis of the guilty verdict on Count 13 as § 1956(a)(1)(A)(i).  Based on the redacted indictment and the parties' submissions, we will assume the judgment's reference to § 1956(a)(1)(A)(i) is merely a scrivener's error.

that he did not inform Garcia about his drug dealing until seven months after the $10,000 transaction at issue here and that no evidence corroborates any inference that Garcia knew about the source of the proceeds or concealed that source. We disagree. The jury heard testimony that Garcia, Punter, and Fawkes were friends or acquaintances from the Virgin Islands; Garcia received $10,000 from Wade, whom Punter admitted he employed to wire drug payments destined for Fawkes; Garcia told authorities that he believed the $10,000 was for him to establish a hair and nail salon for Wade in the Virgin Islands, despite Wade's testimony that she never intended such an endeavor; Fawkes, Garcia, and another codefendant traveled to Alaska two months after the $10,000 transaction and stayed with Punter; while in Alaska, Punter gave Garcia cocaine from his "personal stash," although Garcia knew that Punter personally did not use cocaine; and that when Punter left Alaska several months later, he told a buyer who still owed him money to leave it with Garcia, who remained in Alaska despite his friend Punter's departure. Based on that evidence, and taken in the light most favorable to the Government, we find that a reasonable jury could have discredited Punter's testimony that he did not inform his childhood friend about his drug dealing business until after the $10,000 transaction. In addition, based on the additional circumstantial evidence, the jury could have concluded that Garcia knew that the money he received was the proceeds of unlawful activity. Furthermore, that evidence, combined with Punter's testimony that he employed other people to wire money to third parties in the Virgin Islands to remit to Fawkes as payment for drugs, could also lead a reasonable jury to conclude that Garcia knew Wade sent him the money to conceal the nature and source of the proceeds. This evidence was indeed

5

sufficient to support a rational conclusion, beyond a reasonable doubt, that Garcia had engaged in money laundering.

B.

Garcia also challenges the sufficiency of the evidence on the conspiracy count. The relevant statute provides that "[a]ny person who conspires to commit any offense defined in . . . section [1956] . . . shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."  18 U.S.C. § 1956(h).  To prove conspiracy to commit money laundering, the Government must establish: "(1) that an agreement was formed between two or more persons; and (2) that the defendant knowingly became a member of the conspiracy."  *United States v. Greenidge*, 495 F.3d 85, 100 (3d Cir. 2007).

We reject Garcia's argument that the government failed to establish sufficient evidence that he entered into an agreement for the purpose of money laundering. Punter's trial testimony established that he engaged in money laundering and enlisted the aid of a number of his acquaintances, including Wade.  The jury had an ample basis for rejecting Garcia's explanation for why he was sent $10,000 from Wade, and could infer from such dissembling, as well as Garcia's relationship with Punter and Fawkes, that Garcia agreed to participate in laundering the proceeds of unlawful activity.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.

6